### Addison County Automotive, Inc. v. Dennis G. Church and Cassandra Church

[481 A.2d 402]

No. 83-365

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 22, 1984

*Peter F. Langrock* and *John L. Kellner,* Law Clerk (On the Brief), of *Langrock Sperry Parker & Wool,* Middlebury, for Plaintiff-Appellee.

*Kevin R. Klamm* of *Lynch & Foley,* Middlebury, for Defendants-Appellants.

**Gibson, J.** Defendants appeal from a jury verdict awarding damages in the amount of $9,000 to plaintiff on account of

defendants' violation of a restrictive covenant in a lease between the parties. We affirm.

Plaintiff operates a Tuff-Kote automotive rustproofing business at One Washington Street, Middlebury, Vermont; plaintiff also sells automotive accessories. The property on which the business is located consists of two buildings, one fronting on the street and the other set a short way back. Plaintiff occupied the street-front building until January 1981 when it sold the property, including both buildings, to defendants; at that time it moved into the rear building where it continued to carry on its business pursuant to a lease from defendants containing the following restrictive covenant:

> 2.01 The Landlord hereby grants and confers upon the Tenant the exclusive right at the Location throughout the Term of this Lease Agreement to use and occupy the demised premises for the purpose of operating its business in automotive, rustproofing, insulating, waxing, painting and the sale of automotive accessories and other products and any other business of a similar nature or allied thereto.

> 2.02 During the Term of this Lease Agreement, the Landlord shall not aurhorize [sic] or permit any other person to sell and shall not on its behalf sell at the Location any of the commodities specified in Section 2.01 hereof, or to perform similar services.

Five months later, defendants leased a portion of the front building to Number One Auto Parts, a business that sold over three thousand types of auto parts, including at least four automotive accessories that competed directly with plaintiff. Subsequently, plaintiff's sales of automotive accessories dropped significantly, and this lawsuit ensued.

On appeal, defendants challenge the trial court's instructions to the jury, the court's denial of defendants' motion for a directed verdict, and the court's denial of defendants' motion for remittitur or, in the alternative, for a new trial. We shall consider the issues in order.

Defendants first claim that the court erred in not submitting the lease to the jury for it to interpret, together with a charge that restrictive covenants are not favored in Vermont and

should be strictly construed. Defendants contend that such a charge was necessary on the ground that the terms of the restrictive covenant were ambiguous, unreasonable and overly broad and therefore were proper considerations for the jury in construing the lease.

Policy considerations dictate that courts proceed with caution in giving effect to covenants in restraint of trade, since the interests of the consumer are usually "better served by competitive forces in the market place." *Vermont National Bank* v. *Chittenden Trust Co.*, 143 Vt. 257, 261, 465 A.2d 284, 287 (1983). Restrictive covenants must be written with clear and unambiguous language and be sufficiently specific to allow determination of whether their effect is reasonable. *Cross-Abbott Co.* v. *Howard's, Inc.*, 124 Vt. 439, 444, 207 A.2d 134, 137 (1965). When the terms of a restrictive covenant are clear and definite, the construction of the covenant is a matter of law for the court, *Vermont National Bank* v. *Chittenden Trust Co., supra,* 143 Vt. at 266, 465 A.2d at 290; *Welch* v. *Barrows*, 125 Vt. 500, 504, 218 A.2d 698, 702 (1966); only when the meaning is ambiguous is the interpretation left to the jury and extrinsic evidence of the parties' actions and intentions admissible to assist the jury in determining the meaning. *William Feinstein Brothers, Inc.* v. *L. Z. Hotte Granite Co.*, 123 Vt. 167, 171, 184 A.2d 540, 542 (1962).

In this case, defendants clearly granted plaintiff the exclusive right to sell "automotive accessories" at One Washington Street. Although the term "automotive accessories" was not defined in the lease, the meaning of the term was not disputed in the testimony and the parties agreed on four items of automotive accessories that Number One Auto Parts was selling in competition with plaintiff. There was no ambiguity in the covenant's terms requiring jury interpretation. Inasmuch as the covenant applied to only one type of business on only one parcel of land, it was neither overly broad nor unreasonable. *Vermont National Bank* v. *Chittenden Trust Co., supra,* 143 Vt. at 261, 465 A.2d at 287. The trial court did not err in refusing to submit the lease to the jury for its interpretation.

Secondly, defendants claim the court erred in failing to in-

struct the jury that if it found the sale of automotive accessories was incidental to plaintiff's primary business of rustproofing, then it should find that defendants did not violate the terms of the lease. Defendants cite a number of cases from other jurisdictions in support of their contention. In each of the cases cited, however, the restrictive covenant is couched in general terms, prohibiting any lease to the "same or similar" type of business or to a lessee whose "principal" business was the same as that of the protected lessee. E.g., *Winter Park Appliance Center, Inc.* v. *Walling Crate Co.*, 196 So. 2d 198 (Fla. Dist. Ct. App. 1967) (music store that sold radios, phonographs, stereos and television sets not in violation of similar-type-of-business covenant held by appliance store, which failed to meet its burden of proving that music store sold "appliances") ; *St. Louis Union Trust Co.* v. *Tipton Electric Co.*, 636 S.W.2d 357 (Mo. Ct. App. 1982) (company that sold television sets and stereos in addition to appliances not in violation of "principal-business" covenant held by appliance store when proof did not establish that principal use of competing premises was for sale of appliances) ; *Sol Gord Luncheonette, Inc.* v. *S. & H. Realty*, 50 A.D.2d 799, 375 N.Y.S.2d 398 (1975) (variety store that sold cigarettes and greeting cards not in violation of covenant held by stationery store, where covenant prohibited rental to "store commonly known as a stationery store for the sale of newspapers or magazines . . . .").

When construing a restrictive covenant, a court must look at all the pertinent language of the covenant in order "to give effect to the intention of the parties if it can be gathered from the language used . . . ." *McDonough* v. *W. W. Snow Construction Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973) ; *Welch* v. *Barrows, supra,* 125 Vt. at 504, 218 A.2d at 702. Section 2.01 of plaintiff's lease granted it "the exclusive right . . . to use and occupy the demised premises for . . . the sale of automotive accessories . . ."; section 2.02 of the lease required that defendants "not aurhorize [sic] or permit any other person to sell . . . *any of the commodities* specified in Section 2.01 hereof . . . ." (Emphasis added.) The language is clear and the intention of the parties unmistakable—plaintiff was to have the exclusive right to sell automotive accessories

at One Washington Street in Middlebury and *any* sale of such items by any other person would be a violation of the covenant. " 'Where there is no doubt or obscurity, there is no room for construction and the instrument must be given effect according to its terms.' " *Welch* v. *Barrows, supra,* 125 Vt. at 504, 218 A.2d at 702 (quoting *Aiken* v. *Clark,* 117 Vt. 391, 393, 92 A.2d 620, 621 (1952)). Defendants were not entitled to the requested instruction, and there was no error on the part of the trial court in refusing to give it.

As a third claim of error, defendants contend the court should have granted their motion for a directed verdict on the ground that plaintiff failed to establish a causal relation between the presence of the competing tenant and plaintiff's loss of automotive accessory sales. At the close of plaintiff's case, defendants moved for a directed verdict on the grounds that the restrictive covenant was unreasonably broad and ambiguous, the sale of automotive accessories was only an incidental portion of plaintiff's business, and therefore there was no violation of the restrictive covenant and no damages as a matter of law. Defendants renewed the motion on the same grounds at the close of all the evidence. At neither time, however, did defendants claim there was a lack of causal connection between the presence of Number One Auto Parts and plaintiff's losses. Subsequent to verdict, defendants moved for judgment notwithstanding the verdict (n.o.v.) or, in the alternative, for a new trial. In this motion, defendants for the first time raised the causation issue in addition to reiterating the arguments advanced in their previous motions for directed verdict. The trial court denied the motion for judgment n.o.v. without comment.

A motion for directed verdict must "state the specific grounds therefor." V.R.C.P. 50(a). Issues not raised before the trial court in a motion for directed verdict may not be raised for the first time on appeal. *Stacy* v. *Merchants Bank,* 144 Vt. 515, 519, 482 A.2d 61, 63 (1984).

Defendants contend that the issue of causation was properly raised below because it was presented to the trial court in their motion for judgment n.o.v. A motion for judgment n.o.v. "falls under the provisions of V.R.C.P. 50(b).

V.R.C.P. 50 (b) requires that legal issues be raised on motion for directed verdict at the close of all the evidence in order to be challenged later by way of judgment notwithstanding the verdict." *Lent* v. *Huntoon,* 143 Vt. 539, 551, 470 A.2d 1162, 1170 (1983). See also 9 C. Wright & A. Miller, Federal Practice and Procedure § 2537, at 598 (1971) (motion for judgment n.o.v. is, in effect, "a renewal of the motion for directed verdict made at the close of the evidence . . . [and] cannot assert a ground that was not included in the motion for a directed verdict"). Inasmuch as defendants did not properly raise the issue below, they are not entitled to have it considered on appeal.

■■■■■■■ Finally, defendants contend the court erred in denying their motion for a remittitur or, in the alternative, for a new trial based on plaintiff's failure to establish a causal relation between the presence of Number One Auto Parts and plaintiff's loss of automotive accessories sales. The remittitur procedure is set forth in V.R.C.P. 59 (a), which provides: "A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit such portion thereof as the court deems to be excessive." The rule accords with prior Vermont practice. *Lancour* v. *Herald & Globe Association,* 112 Vt. 471, 473–74, 28 A.2d 396, 399 (1942). The decision to grant a remittitur and the amount thereof are left to the trial court's discretion; unless there is an abuse of discretion on the part of the court, its decision must stand. *Id.* at 474, 28 A.2d at 399. Likewise, the disposition of a motion for a new trial lies within the sound discretion of the trial court and will not be reversed on appeal unless an abuse of discretion is shown. *Hoague* v. *Cota,* 140 Vt. 588, 591, 442 A.2d 1282, 1283 (1982).

■■■■■■■ When an action does not allow an exact computation of damages, as is the case here, the verdict must stand unless grossly excessive. *Sunday* v. *Stratton Corp.,* 136 Vt. 293, 309, 390 A.2d 398, 407 (1978) ; *Girroir* v. *Carpenter,* 136 Vt. 290, 292, 388 A.2d 831, 833 (1978). In ruling on a motion for new trial, the trial court must view the evidence in the light most favorable to the verdict, and this Court must accord the ruling below all possible presumptive support. *Gregory* v.

*Vermont Traveler, Inc.,* 140 Vt. 119, 121, 435 A.2d 955, 956 (1981).

At trial, plaintiff's president testified that the losses suffered by his corporation amounted to $10,800 (plaintiff's counsel reduced this figure to $9,300 in closing argument) and that those losses occurred after Number One Auto Parts moved into defendants' building. Defendants sought to tie the losses to a decline in plaintiff's rustproofing business, plaintiff's relocation, a general decline in the automobile industry, lack of advertising by plaintiff, and the opening of two new automotive products businesses in the area.

It is the proper function of the jury to evaluate the evidence, assess its reliability, and resolve factual disputes. *Birkenhead* v. *Coombs,* 143 Vt. 167, 174, 465 A.2d 244, 247 (1983). "[W]here different minds can reasonably come to different conclusions on the evidence," the trial court should not interfere with the jury's verdict. *Sunday* v. *Stratton Corp., supra,* 136 Vt. at 307–08, 390 A.2d at 406. Here, where the verdict was within the range of the evidence presented and the jury could reasonably conclude that defendants were responsible by leasing to a competing business in violation of plaintiff's restrictive covenant, the trial court did not abuse its discretion in denying defendants' motion for remittitur or, in the alternative, for a new trial.

*Affirmed.*