410

# Stephen F. Morse and Robert R. Cote and Joyce E. Morse v. Michael J. Murphy

[599 A.2d 1367]

No. 89-456

Present: Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.) and Martin, Supr. J., Specially Assigned

Opinion Filed July 19, 1991

Motion for Reargument Denied October 4, 1991

*David C. Drew* and *H. Zachary Rhodes* of *Drew & Rhodes*, Lyndon Center, for Plaintiffs-Appellees.

*Liam L. Murphy* of *Langrock Sperry Parker & Wool*, Burlington, for Defendant-Appellant.

## Entry Order

The controversy in this case focuses on the width of a right-of-way held by plaintiffs across property owned by defendant in the town of Lyndon. Defendant appeals from the trial court's judgment holding that the plaintiffs' right-of-way is fifty feet wide. We affirm.

The record facts are simple. In 1974, adjoining landowners, Morse and Bailey, exchanged deeds the purpose of which was to create rights-of-way over their respective properties. The rights-of-way connected and formed one continuous road.

The Morse to Bailey deed dated July 8, 1974, conveyed "a fifty foot wide strip of land" on which Bailey was to build a road and over which Morse reserved a right-of-way. Four months later, Bailey deeded to Morse "the right to cross and recross a certain parcel of land over an existing roadway," but did not mention the width of the right-of-way or the parcel of land. Both deeds, however, contemplated that the strips of land over which the rights-of-way pass might be conveyed by Bailey to the Town of Lyndon "as a public highway."

Thus, the parties created a road over a strip of land the fee to which remained in Bailey. The strip of land (the sum of the two strips of land described in the two deeds) might be deeded to the town at some indeterminate time in the future.

Holding that the deeds created an ambiguity as to the width of the right-of-way in dispute, the trial court allowed Bailey to testify that the parties intended to exchange rights-of-way fifty feet wide "so a substantial road could be put in." Whether, as a matter of law, there was an ambiguity is debatable. Even absent Bailey's testimony, the facts and circumstances support a conclusion that all of the right-of-way was intended to be fifty feet wide.

■ The deed to Bailey described the strip of land conveyed as fifty feet wide. It anticipated that this strip of land might be conveyed to Lyndon. The deed from Bailey described the right-of-way without mentioning its width, but stated that the underlying "strip of land" may be conveyed to Lyndon. If Lyndon were to be conveyed a fifty-foot-wide strip for part of the road it is reasonable to assume that it would receive fifty feet for the other part. The right-of-way for public highways is ordinarily

three rods (fifty feet) wide. 19 V.S.A. § 702. Therefore, a conclusion that Morse and Bailey intended to create a road that was to be over a fifty-foot right-of-way in part and then funnel down to a narrower right-of-way is an irrational and strained view of the deeds.

■■ If, on the other hand, an ambiguity was present, the court properly relied on extrinsic evidence of the parties' intentions to resolve it. See *Fassler v. Okemo Mountain, Inc.*, 148 Vt. 538, 541, 536 A.2d 930, 931 (1987) (where meaning of deed unambiguous, extrinsic evidence of parties' intentions unnecessary); *Braun v. Humiston*, 140 Vt. 302, 307, 437 A.2d 1388, 1390 (1981) (where deed not clear additional evidence admissible). The trial court also found as follows:

> Defendant Murphy was on notice that his property was subject to an easement that was ambiguously defined in the deed. He was on notice to inquire and look further to determine the extent of the encumbrance. He did not do so and cannot now obtain the relief and injunctions he now seeks.

Defendant never asked Bailey the width of the right-of-way; consequently, this finding is not clearly erroneous. See *Page v. Lyle H. Hall, Inc.*, 125 Vt. 275, 276, 279, 214 A.2d 459, 461, 463 (1965) (ambiguous language in deed a warning to third parties).

*Affirmed.*

**Gibson J.**, dissenting. The majority holds alternatively that (1) if the October 8, 1974 deed from James Bailey to Stephen and Joyce Morse is unambiguous, it conveyed a fifty-foot right-of-way, and (2) if the deed is ambiguous, the trial court correctly relied on extrinsic evidence to resolve the ambiguity. The first alternative ignores express language of the deed, which limits the right-of-way to the "existing roadway," and the second alternative ignores the fact that when defendant, a subsequent, bona fide purchaser for value, did inquire about the right-of-way, he was given misleading information. I, therefore, respectfully dissent.

I.

The majority first presupposes the deed to be unambiguous. On October 8, 1974, defendant's predecessor in title, James T.

Bailey, granted plaintiffs Stephen Morse, Sr. and Joyce Morse "the right to cross and recross a certain parcel of land over *an existing roadway*." (Emphasis added.) Although a deed executed three months earlier by the same parties granted Mr. Bailey a fifty-foot-wide strip of land through the Morse property, the deed that is in dispute made no corresponding attempt to spell out the width of the right-of-way contained therein. At the time of the conveyance, the Morses were using the "existing roadway" as a means for their farm vehicles to obtain access to their hayfields.

As the Supreme Court of Virginia has explained:

> Where no width is expressed in the instrument creating a new right of way, the determination of width is made by reference to the intention of the parties to the grant, as determined by the circumstances existing at the time and affecting the property. If the object of the right of way is expressed, then the dimensions of the way are such as to be "reasonably sufficient for the accomplishment of that object." *When, however, an instrument refers to and grants a right of way over an already existing road, the right of way is limited to the width of the road as it existed at the time of the grant.*

*Waskey v. Lewis*, 224 Va. 206, 211, 294 S.E.2d 879, 881 (1982) (emphasis added) (citations omitted) (quoting *Hamlin v. Pandapas*, 197 Va. 659, 664, 90 S.E.2d 829, 834 (1956)); see also Annot., *Width of Way Created by Express Grant, Reservation, or Exception Not Specifying Width*, 28 A.L.R.2d 253, 267–68 (1953) ("Usually if the instrument granting or reserving a right of way makes reference to a way existing at the place contemplated, and especially if the right expressly given is to use that way and it is well defined, there is little ground for the contention that the intended width was other than that of the existing way.") (collecting cases).

In the instant case, the trial court found that, at the time of conveyance, the travelled portion of the roadway was ten to twelve feet wide but that necessary ditching and lateral supports required a total width of thirty-five to forty feet for the road as it then existed. The majority transforms the "existing roadway" into a fifty-foot right-of-way—the width required by statute for a public highway—by focusing on that portion of the

deed providing for the possible future grant to the town of the "strip of land over which said right of way passes." Whether such a conveyance would ever be made, however, is entirely speculative. Under the terms of the deed, that decision vested solely in the discretion of Mr. Bailey as owner of the property in question.

The majority reasons that "a conclusion that Morse and Bailey intended to create a road that was to be over a fifty-foot right-of-way in part and then funnel down to a narrower right-of-way is an irrational and strained view of the deeds." It is not irrational, however, for a property owner to retain control over the width of a right-of-way passing over his or her property, reserving decision as to when and if to convey to the town a strip of land of sufficient width to accommodate a public highway. Further, the parties knew how to include a specified width in the description, had they wanted to do so, since they had done that very thing just three months earlier.

This transaction was the conveyance of an easement that was not a public highway, by a private party to a private party. Plaintiffs do not argue that the right-of-way was in the process of becoming a town highway or that the deed required that it become a town highway. Under the deed, the grantor was in a position to add whatever width might have been needed in order to establish a town road—if he wanted a town road traversing his property—inasmuch as he retained ownership of the servient estate. This provision in the deed, merely allowing the grantor to dedicate the road to the town without having to obtain the grantees' consent or cooperation, was not irrational. I am unable to perceive an unambiguous conveyance of a fifty-foot-wide right-of-way in the deed.

## II.

The majority holds, alternatively, that if the deed is ambiguous, the trial court properly relied upon extrinsic evidence of the contracting parties' intentions inasmuch as the ambiguity provided constructive notice requiring inquiry to determine the extent of the encumbrance, an inquiry defendant failed to make. This holding, however, is grounded upon an erroneous finding and does not adequately address defendant's argument that he is an innocent purchaser for value.

First, the trial court's finding that defendant did not inquire about the extent of the encumbrance is incorrect. When defendant purchased the property from Bailey, he asked about the road, and Bailey told him that it was a "farm road"; however, Bailey never indicated that the right-of-way was fifty feet wide. Further, when defendant attempted at trial to cross-examine Bailey about their conversation, plaintiffs' attorney objected—asserting it was irrelevant—and then stipulated that defendant "didn't know what the intentions were of the [contracting] parties when they created these deeds in 1974."

Second, as a general rule, "subsequent innocent purchasers for value are insulated from hidden mistakes in a deed." *Jones v. Carrier*, 473 A.2d 867, 868 n.1 (Me. 1984). Although ambiguous language is a warning to third parties, *Page v. Lyle H. Hall, Inc.*, 125 Vt. 275, 276, 214 A.2d 459, 461 (1965), constructive notice is limited to those facts that a reasonably diligent inquiry would have revealed. See, e.g., *Lakeside Assocs. v. Toski Sands*, 131 Mich. App. 292, 298, 346 N.W.2d 92, 95 (1983); *Allen v. Green*, 229 Va. 588, 594, 331 S.E.2d 472, 476 (1985). In the instant case, defendant's inquiry is undisputed and, I believe, sufficient. There was no reason for defendant to suppose that the "farm road" occupied a uniform width of fifty feet across the property.

The majority, in rejecting defendant's argument that he is a subsequent purchaser for value, approves the trial court's use of extrinsic evidence. The trial court, however, used the extrinsic evidence to reform the deed to correspond to an unmemorialized "mutual intent" that "by mistake . . . was not expressed in the deed."*

---

* The trial court's analysis is reflected by the following findings:

5. This is ambiguous and resort must be to matters outside the deed to understand what was conveyed. At least, resort must be to then existing use and physical features of the existing roadway.

6. *Once you go outside the deed, all facts and circumstances surrounding the conveyance can be and should be considered* to determine what it was that was intended to be conveyed.

7. When all the surrounding facts and circumstances are examined, the intention of the parties is clear.

8. *James Bailey testified and this court finds that he intended to convey a 50-foot right-of-way.* This was the mutual intent of both the

As stated in 6A R. Powell, Powell on Real Property:

> [R]eformation is not available against a bona fide purchaser. A party who purchases property for value and without notice will have a defense in an action to reform a deed involving that property. The purpose of this limitation is clear. When a bona fide purchaser acquires an interest in land and makes an investment in the land, that party is entitled to have his or her expectations protected. This is in accord with the principles behind the recording acts. A person should not be deprived of his or her investment when he or she had no means of discovering the defect.

¶ 901[3], at 81A-166 (rev. ed. 1991) (footnotes omitted).

Nor do the majority citations to *Fassler v. Okemo Mountain, Inc.*, 148 Vt. 538, 541, 536 A.2d 930, 931 (1987), and *Braun v. Humiston*, 140 Vt. 302, 307, 437 A.2d 1388, 1390 (1981), *overruled on other grounds*, *Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 619, 471 A.2d 224, 226 (1983), address when and whether extrinsic evidence of the contracting parties' intentions can be considered where a third party is involved. They state the well-established proposition that extrinsic evidence can be considered where the instrument itself is not clear. *Fassler*, 148 Vt. at 541, 536 A.2d at 931; *Braun*, 140 Vt. at 307, 437 A.2d at 1390; accord *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988) (in determining whether a deed is ambiguous, a court may consider extrinsic evidence of the circumstances surrounding the making of the deed). But they do not deal with defendant's argument that where the extrinsic evidence concerns the contracting parties' unexpressed intentions, it cannot be imposed upon a subsequent innocent purchaser for value. See, e.g., *Jones v. Carrier*, 473 A.2d at 869 (assuming contracting parties by mutual mistake incorrectly described the boundary, subsequent purchasers were "entitled to protection as bona fide purchasers for value without notice" where the deed's mistaken description was not apparent on its face); *Lakeside Assocs. v. Toski Sands*, 131 Mich. App. at 298, 346 N.W.2d at 95 ("if the intentions of the original contracting parties are not

---

grantees and grantors but *by mistake the intent was not expressed in the deed.*
(Emphasis added.)

reflected in the public record, a subsequent bona fide purchaser who has relied upon the public record cannot be bound by those unrecorded intentions").

In sum, the majority interprets the deed on the basis of Bailey's and the Morses' unmemorialized and uncommunicated intentions to mean something its plain language does not express. Further, this unwritten understanding is being imposed upon a subsequent purchaser for value who did make a reasonably diligent inquiry into the right-of-way's width and had no actual knowledge of the intended width. I therefore dissent.